**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CLIFFORD H. STUBBE, *et al.*,    *
                                 *
    Plaintiffs,                  *
                                 *
vs.                              *    CIVIL ACTION NO. 22-00339-KD-B
                                 *
PHH MORTGAGE CORPORATION,        *
                                 *
    Defendants.                  *

<u>REPORT AND RECOMMENDATION</u>

This action is before the Court on Plaintiffs Clifford H. Stubbe and Paul John Hansen's motion to stay foreclosure (Doc. 9) and motion for emergency hearing (Doc. 10).  The motions have been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S).  Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiffs' motions be **DENIED**.

I.   <u>BACKGROUND</u>

In this action, Plaintiffs Clifford H. Stubbe ("Stubbe") and Paul John Hansen ("Hansen") seek to quiet title to the property located at 9565 Highway 84, Evergreen, Alabama 36401 (the "property").  Plaintiffs' complaint alleges that Stubbe purchased the property in 2005 and later sold the property to Hansen via a quitclaim deed that was recorded in 2022.  (Doc. 1-1 at 9-11).  The complaint states that Defendant PHH Mortgage Corporation, "as

'servicer of the alleged loan.', Loan Number: 3000202641," contacted Stubbe by mail in 2022 "and claimed the right to foreclose for an outstanding unpaid note (Loan Number: 3000202641) that is now due and owing in full."[1] (Id. at 9-10). The complaint alleges that Plaintiffs contacted Defendant by mail to arrange "the simultaneous exchange of payment for the wet ink signed note, negotiable instrument, as claimed to be held by the Defendant as associated with Defendant's claim to right of foreclosure," but Defendant failed to respond to Plaintiffs' request. (Id. at 11). As a result of Defendant's failure to produce the "wet ink signed note" as requested, Plaintiffs contend that they are "entitled to a judicial declaration" that the property is "free and clear of encumbrance associated with Defendant's claim of an outstanding note with Loan Number: 3000202641." (Id. at 12).

On August 30, 2022, Defendant removed this action from the Circuit Court of Conecuh County, Alabama to this Court. (Doc. 1). On September 7, 2022, Defendant filed a motion to dismiss Plaintiff's complaint (Doc. 3), which has now been fully briefed. On September 21, 2022, Plaintiffs filed a motion for summary judgment (Doc. 5), which the undersigned recommended be denied as premature. (Doc. 6).

---

[1] Unless otherwise indicated by brackets, quoted language from Plaintiffs' filings is reproduced herein without modification or correction for typographical, grammar, or spelling errors.

On October 11, 2022, Plaintiffs filed the instant motion to stay Defendant's "scheduled forelos[ur]e set for October 12, 2022, of the subject property" until this quiet title action can be adjudicated. (Doc. 9). The motion states that "Plaintiff requires time to seeks information from Defendant on who is the true party that is claiming authority, or is claiming authority to delegate to Plaintiff as to the foreclose activity on the subject property." (Id. at 1). Plaintiffs assert that they wish to "utilize a willing investor to pay off the note" in exchange for "the wet ink signed note," thus eliminating any need for foreclosure. (Id.). However, Plaintiffs state that Defendant "refuses to agree, or even consider, or discuss, as to receiving adequate payment for the exchange of wet ink note." (Id.). Plaintiffs contend they will suffer irrevocable damage "as to reputation, homelessness, and constitutionally protected property rights . . . if Defendant continues to refuses to present the subject note in exchange for the offered payment, forthwith." (Id.). Plaintiffs request that the Court "order stay of the scheduled foreclosure . . . for 90 days, or as long as the court believes is reasonable" while the issues in the instant quiet title action are settled. (Id. at 2).[2] Plaintiffs also request a hearing before the Court. (Doc. 10).

_____

[2] Plaintiffs state that if their request for a stay is not granted, they intend to "purchase" a memorandum of law "that has been

## II.  **DISCUSSION**

"The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1231 (11th Cir. 2005) (per curiam).  A district court may issue a temporary restraining order ("TRO") without written or oral notice to the adverse party or its attorney only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

A "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

---

reported as irrefutable every time it has been utilized . . . in . . . identical situations" and file it "as an immediate 'Motion for Reconsideration.'" (Doc. 9 at 1).  However, a lawsuit is not a proper venue for hiding the ball and strategically withholding evidence or arguments.  Plaintiffs are therefore cautioned that motions for reconsideration **may not be used** to offer new legal theories, argument, or evidence that could have been presented in a previously filed motion or response.  See Escareno v. Noltina Crucible & Refractory Corp., 172 F.R.D. 517, 519 (N.D. Ga. 1994). Instead, motions for reconsideration "serve the limited purpose of correcting manifest errors of law or fact or calling the Court's attention to significant changes in controlling precedent or newly discovered evidence 'which could not have been adduced during the pendency of the motion.'" Id. at 519-20 (citations omitted).

A TRO and a preliminary injunction have the same four elements, and the movant bears the burden of demonstrating that all four elements are present. Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam). To be eligible for a TRO or preliminary injunctive relief, a movant must establish: (1) a substantial likelihood of success on the merits of the underlying case; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury if relief is not granted outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Schiavo, 403 F.3d at 1225-26; Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011). Preliminary injunctive relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation omitted).

To the extent Plaintiffs seek a TRO, they have not adhered to the strict requirements of Rule 65(b)(1). Although their motion generally alleges that they have and will suffer irrevocable damage "as to reputation, homelessness, and constitutionally protected property rights" if the foreclosure proceeds, Plaintiffs fail to set out "specific facts in an affidavit or a verified complaint" which "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can

be heard in opposition."[3] <u>See</u> Fed. R. Civ. P. 65(b)(1)(A). Further, Plaintiffs' certificates of service are insufficient under Rule 65(b)(1) because they do not certify why a TRO should issue without notice and before Defendant can be heard in opposition.[4]

Additionally, Plaintiffs have failed to meet their burden of establishing each of the four prerequisites for issuance of a TRO or preliminary injunctive relief. Turning to the first prerequisite, the Court finds that Plaintiffs have not shown a substantial likelihood of success on the merits of their underlying action. It appears from both the complaint and the instant motion that Plaintiffs assert that Defendant is barred from foreclosing on the property because it has not accepted Plaintiffs' offers to make full payment in exchange for the production of the "wet ink" version of the promissory note. Thus, Plaintiffs' quiet title

---

[3] For example, the motion makes no differentiation between the damage that will be suffered by each Plaintiff, despite the fact that Stubbe is alleged to have sold the property to Hansen. (<u>See</u> Doc. 1-1 at 9; Doc. 9).

[4] The Court recognizes that it must liberally construe Plaintiffs' *pro se* pleadings. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). However, Plaintiffs' *pro se* status does not shift the burden to this Court to serve as Plaintiffs' *de facto* counsel or develop legal arguments that they failed to develop for themselves. <u>See</u> <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168–69 (11th Cir. 2014). Nor does Plaintiffs' *pro se* status excuse them from complying with the Federal Rules of Civil Procedure in connection with their request for a temporary restraining order or preliminary injunctive relief. <u>See</u> <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

claim appears to rely on the discredited "show-me-the-note" theory, which presupposes that "only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." See Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 253 (5th Cir. 2013) (quotation omitted). Courts applying Alabama law have repeatedly rejected claims premised on such "show-me-the-note" arguments. See, e.g., Farkas v. SunTrust Mortg., Inc., 447 F. App'x 972, 973 (11th Cir. 2011) (per curiam) ("Alabama's foreclosure statute sets forth the requirements for conducting a non-judicial foreclosure under the 'power of sale' contained in the mortgage, but the statute does not provide a cause of action for a mortgagor to require the mortgagee to establish proof of claim prior to initiating the foreclosure.") (citing Ala. Code §§ 35-10-11 to 35-10-14); Graveling v. Castle Mortg. Co., 631 F. App'x 690, 697 (11th Cir. 2015) (per curiam) ("[T]he Gravelings allege that BankUnited failed to provide proper validation of the debt prior to foreclosure, because they did not provide the Gravelings with the 'original' version of the note and mortgage. Alabama's nonjudicial foreclosure statute does not require the party seeking foreclosure to produce the 'original' or 'wet-ink' version of the note and mortgage. Alabama courts that have addressed the issue have found that a party seeking to foreclose under this statute need not produce the 'original wet ink signature promissory note and

7

mortgage' before commencing foreclosure proceedings.") (citations omitted); Levins v. Deutsche Bank Tr. Co. Americas, 2013 U.S. Dist. LEXIS 10571, at *14-15, 2013 WL 308999, at *3 (S.D. Ala. Jan. 25, 2013) (finding no substantial likelihood of success on plaintiff's claim that bank was barred under Alabama law from foreclosing on his property unless it first presented the "wet-inked" original loan and mortage documents); Summerlin v. Shellpoint Mortg. Servs., 165 F. Supp. 3d 1099, 1111 (N.D. Ala. 2016) ("A nonjudicial foreclosure is not invalid because a foreclosing entity, such as Defendant, has failed 'to produce or present original documentation evidencing the underlying debt and security for repayment thereof.'  In other words, a foreclosing entity like Defendant is not required to surrender the original promissory note and mortgage to the mortgagor (or to a court) prior to instituting foreclosure under Alabama law.  As such, Defendant does not have to present the Note to Plaintiff in order to foreclose.") (internal citations omitted); Douglas v. Troy Bank & Tr. Co., 122 So.3d 181, 184 (Ala. Civ. App. 2012) (deeming the plaintiffs' "show me the note" theory "suspect" and finding "no authority in which a nonjudicial foreclosure has been held invalid for failure to produce or present original documentation evidencing the underlying debt and security for repayment thereof").

Even if Plaintiffs had established a substantial likelihood of success on the merits, they have not made an adequate showing that they will be irreparably harmed if the foreclosure proceeds as scheduled on October 12, 2022, because the sale would presumably be subsequent to the redemption remedy specified in Ala. Code § 6-5-248.  See Levins, 2013 U.S. Dist. LEXIS 10571, at *15-16, 2013 WL 308999, at *4 (collecting cases reflecting that "numerous courts have found no irreparable harm" under similar circumstances). Therefore, because there would be a statutory right of redemption to the property after the foreclosure sale, Plaintiffs have not met their burden of showing that the sale of the property via foreclosure on October 12, 2022 would constitute irreparable harm.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned recommends that Plaintiffs' motion to stay foreclosure (Doc. 9) and motion for emergency hearing (Doc. 10) be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to

object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **13th** day of **October, 2022.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**